**SIGNED THIS: January 10, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KATINA A. HARN, | ) | No. 07-81072 |
| f/k/a KATINA A. HIGGINS, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DARIN B. HIGGINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8099 |
| | ) | |
| KATINA A. HARN, | ) | |
| f/k/a KATINA A. HIGGINS, | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on Plaintiff's Motion for Judgment on the Pleadings. The issue is whether hold harmless obligations arising out of a divorce proceeding are nondischargeable in a Chapter 7 bankruptcy case filed after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The issue is answered in the affirmative and the Motion will be granted.

**FINDINGS OF FACT**

    1.     The marriage between the Plaintiff, Darin B. Higgins (DARIN) and the Defendant, Katina A. Harn (KATINA), was dissolved on June 6, 2006.

    2.     The Judgment of Dissolution incorporated by reference a Marital Settlement Agreement (MSA) that serves, among other things, to settle and allocate marital debts.

    3.     Under the MSA, KATINA is awarded possession and ownership of a 2004 Pontiac Grand Prix, is allocated the debt secured thereby payable to National City Bank, and is charged with indemnifying and holding DARIN harmless from liability for the debt.

    4.     Under the MSA, a loan obtained from Daniel and Peggy Higgins for startup of the Country Crossroads store in Eureka is allocated 50/50, with KATINA and DARIN each responsible to pay $17,130.50, and each to indemnify and hold the other harmless from liability for that half.

    5.     KATINA filed a voluntary petition for relief under Chapter 7 on May 18, 2007.

    6.     She scheduled National City Bank as holding a debt secured by the 2004 Pontiac and Dan and Peggy Higgins as holding an unsecured debt for the loan for Country Crossroads.

    7.     KATINA'S Chapter 7 case proceeded as a no asset case and she received a general discharge by order entered September 4, 2007. Her debt to National City Bank was not reaffirmed.

    8.     DARIN commenced this adversary proceeding on August 15, 2007, and seeks a determination that KATINA'S obligations to indemnify and hold him harmless from liability to National City Bank and to Daniel and Peggy Higgins are not dischargeable pursuant to Section 523(a)(15).

**KATINA'S ARGUMENTS**

KATINA contends that Section 523(a)(15) only makes nondischargeable debts that run to a former spouse, so that an obligation to indemnify and hold an ex-spouse harmless from a debt owed to a third party is not within the scope of that provision. Alternatively,

KATINA argues that DARIN has failed to allege that he has actually paid either debt and, as such, this action is premature.

**CONCLUSIONS OF LAW**

KATINA does not appear to dispute that BAPCPA's deletion of the balancing test previously set forth in former subparagraphs (A) and (B) of Section 523(a)(15) renders debts of the kind described in that provision unqualifiedly nondischargeable in a Chapter 7 case. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.21 (15th ed.rev). KATINA claims, instead, that the hold harmless obligations in question are not debts of the kind described in Section 523(a)(15), which makes nondischargeable any debt—

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

As it relates to the statutory language, KATINA'S primary argument is that an obligation to hold an ex-spouse harmless from liability for a marital debt owed to a third party creditor is not a debt "to a spouse, former spouse, or child of the debtor." KATINA relies upon *In re Dollaga,* 260 B.R. 493 (9th Cir.BAP 2001), where the attorney who represented the ex-husband debtor in divorce proceedings filed an adversary complaint to have the debt for her unpaid attorney fees determined nondischargeable under Section 523(a)(15). The Bankruptcy Appellate Panel determined that the attorney creditor lacked standing to bring the action under that provision. The attorney made no allegation that the ex-wife was liable for the fees or was ordered to hold her ex-husband harmless as to the fees.

3

KATINA also relies upon *In re Sanders,* 236 B.R. 107 (Bankr.S.D.Ga. 1999), a case like *Dollaga,* where a divorce attorney creditor sought to have a debt for unpaid attorney fees declared nondischargeable under Section 523(a)(15). Like *Dollaga*, no hold harmless agreement was at issue; the debtor was merely attempting to discharge his debt to his own divorce attorney. Holding that the attorney lacked standing to bring the action under Section 523(a)(15), the court construed the provision as applying only to debts from one spouse to the other, or to a child, incurred in connection with a divorce.

Both *Dollaga* and *Sanders* dealt with a situation where an attorney that represented a party in a divorce was improperly attempting to use Section 523(a)(15) as a basis for nondischargeability of their unpaid attorney fees. The dissimilarity between that situation and the case at bar, which concerns a hold harmless obligation from one ex-spouse to the other arising out of an MSA, is obvious. *Dollaga* and *Sanders* are off point.

KATINA further cites *In re Finaly,* 190 B.R. 312 (Bankr.S.D.Ohio 1995), where the divorce decree ordered the ex-wife to pay $425.00 per month to the parents of the ex-husband on account of a marital debt for a down payment loan. The ex-husband sued the debtor ex-wife seeking a determination that her obligation to pay his parents was nondischargeable under Section 523(a)(15). She moved for summary judgment on the basis that the debt was not incurred in connection with the divorce. The court agreed with the debtor and looked to the legislative history to Section 523(a)(15) for guidance. The cited history states that a debtor's agreement to pay marital debts to third parties is not covered, since it "is only the obligation owed to the spouse or former spouse - an obligation to hold the spouse harmless - which is within the scope of this section." 190 B.R. at 315. The court

reasoned as follows:

> Because the debt in question is owed to the parents of the spouse, the plaintiff cannot argue for nondischargeability under § 523(a)(15). Further, by the express language of the legislative history, the parents of the plaintiff do not have standing to assert nondischargeability under § 523(a)(15). Since this is so, a fortiori, plaintiff is precluded from making such an assertion. Therefore, this court cannot grant plaintiff any relief regarding any obligation that defendant may have to third parties James and Adzie Barstow. Accordingly, defendant's motion will be granted.

*Id.* The Marital Termination Agreement also required the parties to hold each other harmless to the extent of his or her share of the monthly mortgage payment. 190 B.R. at 314. The court expressly refrained from determining whether the ex-wife's agreement to hold the ex-husband harmless for the sum of $425.00 per month was an obligation within the scope of Section 523(a)(15). 190 B.R. 316. The court drew a clear distinction between the ex-wife's direct obligation to the creditor for the mortgage payments and the hold harmless obligation owing to her ex-husband. Most simply, *Finaly* is a recognition of this basic principle: just because a third party debt is the subject of a separate hold harmless or indemnification order by a divorce court that is not dischargeable as to the ex-spouse, the underlying debt to the creditor itself is dischargeable.

Despite the *Finaly* court's seeming uncertainty, in 1995, whether a hold harmless obligation to an ex-spouse is covered by Section 523(a)(15), it is now beyond peradventure that it is. *In re Hosterman,* 2007 WL 2973592 (Bankr.N.D.Okla. 2007) (debtor's obligation in divorce decree to hold ex-spouse harmless from liability for debts allocated to debtor creditor creates a new debt running to the ex-spouse that falls squarely within the exception to discharge at § 523(a)(15); *accord In re Schweitzer,* 370 B.R. 145 (Bankr.S.D.Ohio 2007); *In re Douglas,* 369 B.R. 462 (Bankr.E.D.Ark. 2007); *In re Walden,* 312 B.R. 187

5

(Bankr.C.D.Ill. 2004) (Lessen, J.) (obligation to pay mortgage payments and hold ex-spouse harmless is obligation owed to ex-spouse that may be nondischargeable under either § 523(a)(5) or (a)(15)).

Even without an express "hold harmless" or "indemnification" provision, many courts hold that an ex-spouse's obligation to pay a marital debt directly to the creditor creates a new debt running to the ex-spouse that may be nondischargeable under Section 523(a)(15). *In re Johnson,* 2007 WL 3129951 (Bankr.N.D.Ohio 2007); *In re Anderson,* 2001 WL 34652937 (Bankr.D.Kan. 2001); *In re Gibson,* 219 B.R. 195 (6th Cir.BAP 1998); *In re McClain,* 227 B.R. 881, 885 (Bankr.S.D.Ind. 1998). *Cf. In re Bearden,* 330 B.R. 214, 222-23 (Bankr.N.D.Ill. 2005) (Ch. 7 debtor's obligation to law firm that had represented his former wife in divorce was debt "owed to a former spouse," for dischargeability purposes, even though it was payable directly to law firm).

The MSA imposed upon KATINA a new liability, independent of her preexisting liability to those third party creditors, to indemnify and hold DARIN harmless from liability for the debt to National City Bank secured by the 2004 Pontiac and for KATINA'S half of the debt to Daniel and Peggy Higgins. This new liability runs to DARIN and, as such, represents a prepetition claim held by DARIN against KATINA. Although an indemnity claim may be contingent upon the exercise of rights by the creditor against DARIN, it is nevertheless a "claim" as defined in Section 101(5).[1]

---

[1] Because contingent debts are properly dealt with in bankruptcy, KATINA'S argument that this action is premature until DARIN has actually paid either debt is baseless. Her reliance on *In re LaFleur,* 11 B.R. 26 (Bankr.D.Mass. 1981) is equally unavailing as that case was decided years before paragraph (a)(15) was added to Section 523 and the holding is necessarily limited to the finding that the debts in question were not in the nature of alimony, maintenance or support under paragraph (a)(5).

6

The Court holds that KATINA'S obligation to hold DARIN harmless is a debt "to a spouse, former spouse, or child of the debtor" for purposes of Section 523(a)(15), that was incurred by KATINA in the course of a divorce or in connection with a separation agreement or divorce decree, that is nondischargeable under that provision.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###